**IN THE DISTRICT COURT OF WAGONER COUNTY**
**STATE OF OKLAHOMA**

WAGONER COUNTY, OKLA
FILED
IN DISTRICT COURT

2020 JUN 26 PM 3:49

WAGONER COUNTY
JAMES E. HIGHT
COURT CLERK

| | |
|---|---|
| KYLE BLAKE JOHNSON | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| BOARD OF COUNTY COMMISSIONERS OF | ) |
| THE COUNTY OF WAGONER, a political | ) |
| subdivision and municipal corporation | ) |
| CHRIS ELLIOT, individually, and in | ) |
| his official capacity; | ) |
| TODD RIGGS, individually; | ) |
| LESLEY YOUNG, individually; | ) |
| CITY OF WAGONER, a political | ) |
| subdivision and municipal corporation; | ) |
| TONY PONDS, individually; | ) |
| | ) |
| Defendants. | ) |

CV-2020 - 115

**PETITION**

COMES NOW the Plaintiff, Kyle Blake Johnson (Plaintiff) and hereby submits his

petition in the above matter. In support thereof, Plaintiff states as follows:

1.      Plaintiff is an individual who resides in Wagoner, Oklahoma.

2.      Plaintiff is a former employee of Wagoner County Sheriff's Department (WCSD).

Plaintiff began working for WCSD in August of 2010 and at the time of his termination was

Lieutenant.

3.      Board of The Board of County Commissioners of the County of Wagoner (BCCCW) is

the governing body for Wagoner County public officials and is the proper party to be sued for

claims against County officials not specified in 19 O.S. § 161. BCCCW is named for the

conduct of the WCSD employees amounting to an unconstitutional policy as specified below.

To the extent 19 O.S. §§ 4 and 161 precludes naming BCCCW as a party then such claims exist

1

**EXHIBIT 2**

as to the individual Defendants in their official capacity.  Pursuant to Oklahoma law BCCCW is a political subdivision and municipal corporation.

4.      That Defendant Chris Elliot (Elliot) is and was the Wagoner County Sheriff at all material times. Under 19 O.S. § 161 Chris Elliot is a "County Officer."

5.      Plaintiff was terminated on July 18, 2019.

6.      Plaintiff's First Amendment rights under the U.S. Constitution were violated when he was blocked from commenting after he was critical of a matter of public concern and admonished.  Tony Ponds (Ponds), Dustin Dorr (Dorr),  Elliot , Lesley Young (Young) and Todd Riggs (Riggs) conspired to violate Plaintiff's First Amendment rights as more particularly set forth below.  Specifically,  in retaliation for engaging in protected conduct.  The protected conduct includes:

## I.      TRAVIS POTTS INCIDENT

1.      Officer Travis Potts (Potts) was a City of Wagoner police officer.

2.      On November 30, 2017 Potts was driving while intoxicated in the City of Wagoner and crashed a vehicle he was driving.

3.      The City of Wagoner police responded and arrived at the accident scene.  Potts had two children in the vehicle with him who were ages two (2) and five (5) at the time.  The accident occurred at 8:08 a.m.

4.      Potts was not arrested and in fact the City of Wagoner engaged in a cover-up.  This includes the City of Wagoner (Wagoner) refusing to produce documents pursuant to an Open Records Act, 51 O.S. 24.1 *et seq*. (ORA) request.

5.      Wagoner refused to produce records to the press on an ORA request for the video and documents of the Potts incident. Subsequently, Wagoner labeled documents pertaining to the

2

EXHIBIT 1

Potts incident as confidential because children were present and deemed the documents to be a juvenile record solely to avoid producing the records.

6.      Wagoner refused to produce the documents to several citizen ORA requests and even refused to produce them to a local newspaper, the "Muskogee Now." It sent an ORA request for the documents and was refused the records by Wagoner when Wagoner stated that "[t]he records either do not exist or are confidential pursuant to OS 24A.7." *See* Wright, Leif M., "Wagoner Police Refuse to Answer Why Officer Caught Drunk Driving Wasn't Arrested." https://muskogeenow.com/wagoner-police-refuse-to-answer-why-officer-caught-drunk-driving-wasnt-arrested., attached as Exhibit 1.

7.      Ultimately the video was obtained as a result of an ORA lawsuit and has been posted. www.youtube.com/watch?v=-4Muqyvc9RM and www.liveleak.com/view?t=91ps7_1559250251.

8.      Plaintiff was  outspoken about the Potts incident and criticized the conduct.  Plaintiff was threatened by Ponds. Ponds was and is the Deputy Chief of the City of Wagoner Police department. Ponds was upset at Plaintiff for being vocal and Ponds stated to Plaintiff  "I hope someone kills your motherf*cking *ss the next call your on." 9.     Riggs was and is the Undersheriff for WCSD and Dorr was and is the Major of WCSD.  Both Riggs and Dorr questioned Plaintiff on his criticism of Potts and told him that he does not need to stick his nose where it does not belong to which Plaintiff disputed this and insisted that it was a public safety issue.  Plaintiff was told that he needed to mind his business.

9.      As a result of Plaintiff's criticism of the Potts incident, Wagoner police department blocked Plaintiff from commenting and accessing the Facebook page that was open to members of the public, funded in whole or in part by the people.

3

EXHIBIT 1

10.     Thereafter, Plaintiff was terminated and retaliated against in violation of protected, lawful

conduct.

## II.     TOWN OF OKAY INCIDENT

1.     The Town of Okay, Oklahoma is within the territorial limits of Wagoner County,

Oklahoma.

2.     The Town of Okay, Oklahoma, WCSD, BCCCW and Elliot engaged in an unlawful

speed trap agreement. *See* Emails of December 2018 between Wagoner County Sheriff Chris

Elliot and Town of Okay Mayor, Brad Mathews, attached as Ex. 2.

3.     An Open Records Act, 51 O.S. § 24A.1, *et. seq.* (ORA) request was made on May 30,

2019 as follows:

> Please provide TFO with all e-mails sent or received from Wagoner County
> Sheriff Chris Elliott, email address celliott@wagonercounty.ok.gov to
> bmat7@live.com for the time period of October 01, 2018 to current.

> Please provide TFO with all e-mails sent or received from Wagoner County
> Sheriff Chris Elliott, email address celliott@wagonercounty.ok.gov to anyone at
> the City of Okay, Oklahoma for the time period of December 01, 2018 to January
> 2, 2019.

> Please provide TFO with any and all emails sent or received from the following
> persons, for the dates of December 14[th] 2018 to December 20, 2018.

> Major Dustin Dorr
> Lieutenant Carl Stout
> Lieutenant Elisabeth Crockett
> Kyle Johnson
> Todd Riggs
> Lesley Young

4.     That WCSD, Elliot and BCCCW  failed to comply with the ORA request.

4

EXHIBIT 1

5.     Thereafter, a cover-up was attempted to keep the public from being informed of the unlawful speed trap agreement between Town of Okay, WCSD, BCCCW and Elliot. This includes the Town of Okay attempting to refuse to produce the records. *See* Ex. 3, May 30, 2019 ORA request; Exhibit 4, June 19, 2019 response of Okay; Exhibit 5, June 19, 2019 response to Okay and Exhibit 5 Town of Okay Response to Deficiency. The responsive documents did not produce the December 17, 2018 e-mail even though such was clearly responsive to the request.

6.     Fox23 News made an ORA request for the emails between WCSD and Okay and WCSD produced some emails but intentionally withheld the documents pertaining to the speed trap agreement, thereby committing a misdemeanor.  Plaintiff provided the documents to Fox23.

7.     That Plaintiff was suspended the next day in retaliation for asserting his rights and engaging in constitutionally protected conduct and complying with the law.  WCSD, Elliot and BCCCW suspended Plaintiff essentially because he would not commit a felony.  Willful failure to comply with the ORA is a misdemeanor.  51 O.S. § 24A.17(A).  Two or more people conspiring to commit a misdemeanor is a felony. *See* 21 O.S. § 421.

8.     The next day after Fox23 ran a story with the emails, Plaintiff was confronted by Dorr and asked if he released the information to the media to which Plaintiff admitted to.  Dorr left and went to the office of Chief Deputy of WCSD, Lesley Young (Young).  Dorr, Young and Elliot conspired to retaliate against Plaintiff for engaging in protected conduct.

9.     Plaintiff was suspended pursuant to an unconstitutional policy of WCSD.  The stated reasons were that Plaintiff "disregarded safety and security regulations," failure "to maintain the confidentiality of protected County information.," and [d]istribution or posting of written or printed matter that is not authorized by the Elected Officer."  These were written policies in the

5

EXHIBIT 1

Wagoner County Personnel Policy Handbook-2015. *See* Page 27 of Wagoner County Personnel Policy Handbook, attached as Exhibit 6. Essentially, this policy allows WCSD, Elliot and BCCCW to intentionally withhold documents subject to the ORA or lawful subpoena requests if they deem the document confidential. In this case, WCSD, Elliot and BCCCW deemed the documents confidential merely because of the embarrassing and unlawful nature of the documents, a wholly unlawful reason to conceal documents. Further, the prohibition of distributing or posting written or printed matter that is not authorized by the Elected Officer, presumably Elliot, is unlawful in that it restricts Plaintiff's speech, constitutes a prior restraint, prohibits a public official from performing his duties and engenders unlawful coverups by requiring only the Sheriff from authorizing disclosure-even if the Sheriff is involved in the unlawful conduct.

### III.   INCIDENT WITH MAYOR OF OKAY, OKLAHOMA

1.   On the morning of June 20, 2019, Plaintiff pulled a vehicle over while on duty because the vehicle was driving with no working lights on.

2.   Plaintiff was unaware that the driver of the vehicle was the Mayor of Okay, Oklahoma when he initiated the traffic stop. Plaintiff asked for license and insurance and learned that the Mayor was driving without insurance and with expired tags.

3.   Plaintiff cited the Mayor-as he would anybody else- for defective equipment and driving without insurance. Plaintiff provided the Mayor with a temporary Oklahoma tag pursuant to applicable law and gave him ten (10) days to get insurance on the vehicle. The encounter between Plaintiff and the Mayor was professional and civil and at no time did the Mayor ask for special treatment.

EXHIBIT 1

4.      Approximately twenty minutes after the traffic stop ended,  Riggs cursed at Plaintiff for

pulling the Mayor over and not affording him preferential treatment.

### IV.     VIOLATIONS OF FREE SPEECH

1.      That Wagoner police department maintains a Facebook (FB) page.

2.      That Wagoner police FB page is administered by the City of Wagoner and paid for by the

City with taxpayer funds.

3.      In regard to FB posts, text messages, private emails and other electronic communications,

in light of the ORA definition of record, the postings are clearly a record.  *See Knight First*

*Amendment Institute v. Donald J. Trump*, 302 F. Supp. 3d 541, 553 (S.D. N.Y. 2018)

(@realDonaldTrump Twitter account held to be governmental because the President uses it to

conduct public business); *Davison v. Loudoun County*,  267 F. Supp.3d 702, 711 (E.D. Va. 2017)

(Board Member used Facebook page "as tool of governance" and used public resources to

support the site); *West v. Puyallup*, 410 P.3d 1197, 1201-1202 (Wash. App. 2018) ("…if the

posts relate to the conduct of government and are prepared within a public official's scope of

employment or official capacity.").

4.      Under the ORA, electronic communications made in connection with public business is a

record under the ORA.  That Oklahoma Attorney General opinion, 2009 OK AG 12, specifically

opined that allowing public officials to discuss public business with private devices and not treat

such communications as a record under the ORA would, "allow public officials and employees

to circumvent the open record laws simply by using privately owned electronic communication

devices to conduct public business."  2009 OK AG 12 at ¶ 1. Moreover, such documents are

subject to the Records Management Act and must be preserved.  *Id.; see also* 1995 OK AG 97 at

¶ 6 (stating cell phone records used for public business are open for public inspection).

EXHIBIT 1

5.      That Wagoner police have blocked Plaintiff from commenting on its FB page. Further, Wagoner police have deleted comments made by Plaintiff.

6.      In addition to Wagoner suppressing Plaintiff's rights of free speech, WCSD, BCCCW and numerous agents and employees of them have as well.  This includes Elliot instructing Plaintiff as well as other employees of WCSD and BCCCW that they are not allowed to criticize him or WCSD and such prior restraint extended to Plaintiff's family.

7.      After leaving the employment of WCSD, Plaintiff became employed with the Muskogee County Sheriff's Department.  In February of 2020 Riggs and Dorr communicated with Plaintiff's current employer- the Muskogee Sheriff's Department-in an attempt to have Plaintiff fired from his job.  Dorr, Elliot and Riggs complained about Plaintiff's speech and public postings and labeled Plaintiff as disloyal and a trouble-maker to his employer in an attempt to have Plaintiff fired.

8.      "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *N.Y. Times Co. v. United States,* 403 U.S. 713 (1971)). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rectors & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).

### V.     COUNT 1-42 U.S.C. 1983

Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein. Additionally, Plaintiff asserts the following:

### A.     INDIVIDUAL LIABILITY of WCSD and BCCCW EMPLOYEES

1.      That Plaintiff has a constitutional right of freedom of speech, as guaranteed by the First Amendment of the United States Constitution and as such public officials are forbidden from

8

EXHIBIT 1

discharging or threatening to discharge employees for and from retaliating against them based on his speech.

2.     That Defendants Elliot, Dorr, Young and Riggs violated Plaintiff's First Amendment rights, first by confronting Plaintiff about his speech and retaliating against him.  Additionally, they violated Plaintiff's rights when Dorr and Riggs at the behest of Elliot  violated Plaintiff's First Amendment rights by terminating him in retaliation for his speech in violation of 42 U.S.C. § 1983 (1983).

3.     That Plaintiff's speech was protected by the First Amendment in that it involved a matter of public concern.  Further, his speech was non-disruptive and did not impede or interfere with the WCSD's ability to perform its functions nor was it within his job functions.

4.     That Plaintiff sustained an adverse employment action as a result of his protected speech in that he was terminated and that a significant motivating factor was expression of his political speech and as such termination of Plaintiff is in contravention of his First Amendment rights in violation of 42 U.S.C. § 1983. Plaintiff's speech was not part of his job duties.

5.     That the conduct at issue herein was taken under color of law.

6.     That as a result of the conduct of Elliot, Dorr Young and Riggs, Plaintiff has sustained actual damages in excess of $10,000.00.

7.     Punitive damages should be assessed against Elliot, Young Dorr and Riggs as a result of their conscious disregard of the federally secured rights of Plaintiff.

8.     Plaintiff should be reimbursed for his reasonable attorney fees and court costs.

**B. INDIVIDUAL LIABILITY NON-EMPLOYER-PONDS**

Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein. Additionally, Plaintiff asserts:

EXHIBIT 1

1.   Ponds is employed by the City of Wagoner and is thus a state actor.

2.   To prevail on a First Amendment retaliation claim against a defendant who is not his employer, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.  *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

3.   Plaintiff has suffered an injury that would "chill a person of ordinary firmness from continuing to speak out," *Shero*, 510 F.3d at 1204.

4.   In the First Amendment context, courts have recognized various forms of retaliation that can serve as the basis for a § 1983 claim. *See generally Worrell*, 219 F.3d at 1212.

5.   Ponds retaliated against Plaintiff by screaming at him in a threatening manner and further by causing him to be blocked from the Wagoner police departments FB page and deleting his comments.

6.   That as a result of the conduct of Ponds, Plaintiff has sustained actual damages in excess of $10,000.00.

7.   Punitive damages should be assessed against Ponds as a result of their conscious disregard of the federally secured rights of Plaintiff.

8.   Plaintiff should be reimbursed for his reasonable attorney fees and court costs.

## C. MUNICIPAL AND OFFICIAL CAPACITY LIABILITY-ELLIOT, BCCCW & CITY OF WAGONER

EXHIBIT 1

Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

Additionally, Plaintiff asserts:

### i. CITY OF WAGONER

1. That City of Wagoner is a political subdivision and is a City under Oklahoma law.

2. That Plaintiff has publicly criticized the Wagoner police department. The City of Wagoner deleted Plaintiff's comments from its FB page and then blocked him from it. In doing so, City of Wagoner censored Plaintiff regarding matters of public concern contrary to his First Amendment rights under the U.S. Constitution and in violation of 1983.

3. The internet is among the most important places for the exchange of views, enabling a person "to become a town crier with a voice that resonates farther than it could from any soapbox." *Reno v. American Civil Liberties Union,* 521 U.S. 844, 870. (1997). "Social media like [FB] are the "vast democratic forums of the Internet"—modern public squares where Americans can debate politics, religion, and other social issues. Facebook and other social media provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." Packingham v. North Carolina, ___ U.S. ___, 137 S. Ct. 1730, 1737 (2017) (citing *Reno*, 521 U.S. 844, 870).

4. Social media users use FB "to engage in a wide array of protected First Amendment activity on topics as diverse as human thought." *Id.* at 1735–36. Indeed, "[w]hile in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the "vast democratic forums of the Internet" in general." *Packingham,* 137 S. Ct at 1735-36. (citing *Reno* v. 521 U.S. at 868).

5. Through its FB page, City of Wagoner has established an important forum for the expression of views and opinions about the police department office, and law enforcement

EXHIBIT 1

policies and issues of importance to the City of Wagoner.  In fact, the City of Wagoner frequently posts on the FB page about the police department's official business,  including incidents involving the police department and the response to such incidents.  FB users are entitled, unless prevented by the City of Wagoner, to comment on these posts or those of other speakers.  Any member of the public (including those without a Facebook account who, though unable to comment, can nonetheless view the Page) are thus able to review and consider the various viewpoints expressed on the page. Under governing law, the City of Wagoner's police department's FB page thus qualifies as a public forum under the First Amendment of the U.S. Constitution.

6.     Plaintiff posted critical comments regarding the Travis Potts incident and such posts were deleted by the City of Wagoner, by and through the City of Wagoner Police Department and Ponds and Plaintiff was banned from making any further comments.

7.     The City of Wagoner impermissibly censored Plaintiff based on the content of his speech, his viewpoint, and his identity.

8.     Plaintiff requests that the Court enter judgment declaring that the City of Wagoner's exclusion of Plaintiff from the FB page and site is in violation of the First Amendment of the U.S. Constitution, enjoining the City of Wagoner and its agents from engaging in unlawful censorship of comments, mandating that Wagoner restore Plaintiff's posts and posting privileges, and awarding Plaintiff's damages, attorneys' fees and costs.

ii.     **SHERIFF ELLIOT & BCCCW**

1.     That Sheriff Elliot is statutorily responsible for the conduct of his undersheriffs and deputies. 19 O.S. § 547(A).  Further, Elliot is a policy maker for BCCCW.  Moreover, Plaintiff's rights were violated pursuant to a policy of the BCCCW and Elliot as set forth below.

EXHIBIT 1

Elliot is the Sheriff and policy maker for BCCCW.

2.      Plaintiff was first suspended and then terminated pursuant to a written policy on page 27

of the 2015 Wagoner County Personnel Policy Handbook, a written policy of BCCCW and

Elliot.

3.      Further, Elliot also has an informal custom amounting to a widespread practice that,

although not authorized by written law or express municipal policy, is so permanent and well

settled as to constitute a custom or usage with the force of law; the decisions of employees with

final policymaking authority; and the failure to adequately train or supervise employees.

4.      The failure of Elliot to train his subordinates regarding the constitutional requirements of

the First Amendment directly led to the constitutional deprivations at issue herein and such

failure to train amounted to deliberate indifference. Moreover, the failure of BCCCW to

implement a policy in compliance with the First Amendment and in fact publishing and adopting

a policy contrary to the First Amendment led to the deprivation of Plaintiff's rights.

5.      As a result of the conduct of Elliot, and BCCCW, Plaintiff has sustained actual damages

in excess of $10,000.00.

6.      Plaintiff should be reimbursed for his reasonable attorney fees and court costs.

7.      That this Court should grant Plaintiff declaratory and injunctive relief, declaring that the

written policy of BCCCW as used by Elliot is unconstitutional and permanently enjoin them

from using such policy. Further, this Court should order BCCCW to either rescind the policy or

enact a new policy in compliance with the law.

## VI.     COUNT 2-*BURK* TORT VIOLATION OF OKLAHOMA PUBLIC POLICY-AS TO DEFENDANT BCCCW

In support of this claim, Plaintiff restates and realleges the above as though fully set forth

herein. Additionally, Plaintiff states:

13

EXHIBIT 1

1.      That prior to filing this action Plaintiff fully exhausted his rights under the Oklahoma

Governmental Tort Claims Act, 51 O.S. § 151, *et. seq.*. Specifically, Plaintiff provided written

notice of his claims to the BCCCW and such claims have been denied by operation of law as a

result of a deemed denial.

2.      That Oklahoma public policy prohibits termination in violation of Oklahoma's free

speech constitutional provision found at art. 2 § 22 of the Oklahoma Constitution. *See HIBBEN*

*v. STATE EX REL. DEPARTMENT OF VETERANS AFFAIRS,* Case No. 16-cv-111, Opinion and

Order of Judge Wilson of March 31, 2017 (N.D. Okla.) (citing *Phillips v. Wiseman,* 1993 OK

100, ¶7, 857 P.2d 50, 53.

3.      That the termination of Plaintiff is in contravention of Oklahoma public policy,

specifically he was terminated in violation of his rights of free speech under the Oklahoma

Constitution. Further, he was terminated because he refused to do illegal acts to aid the cover-ups

engaged in by BCCCW and its agents.

4.      As a result of BCCCW conduct. Plaintiff has sustained damages in $10,000.00.

5.      Plaintiff should be reimbursed his court costs incurred herein.

### VI. COUNT 3-MALICIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP a-Elliot, Dorr, Riggs, Young and Ponds

Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth

herein. Additionally, Plaintiff asserts:

1.      Thar Elliot, Dorr, Young and Riggs interfered with Plaintiff's contractual relationship by

terminating him, suspending him and otherwise retaliating against him.

2.      Ponds interfered with Plaintiff's contractual relationship by complaining to WCSD and

its agents about Plaintiff's protected speech and encouraged adverse actions against Plaintiff.

14

EXHIBIT 1

3.    Plaintiff had a contractual interest in his continued employment; Elliot, Riggs, Dorr and Ponds interfered with his employment maliciously and without justification and Plaintiff suffered damages as a result.  Further, Riggs and Dorr attempted to get Plaintiff fired from his new employer.

4.    As a result of the conduct of Elliot, Dorr, Riggs, Young and Ponds,  Plaintiff has sustained actual damages in excess of $10,000.00.

5.    Elliot, Dorr, Riggs, Young and Ponds have acted for reckless disregard of the rights of Plaintiff and intentionally with malice and as such Plaintiff should be awarded punitive damages in excess of $10,000.00.

6.    Plaintiff should be reimbursed his court costs incurred herein.

### VII.    COUNT 4-TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE-Riggs, and Dorr

Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein. Additionally, Plaintiff asserts:

1.    That Dorr, and Riggs interfered with Plaintiff's prospective economic advantage as set forth above.  Specifically, Dorr and Riggs communicated with Muskogee County Sheriff's Department to attempt to get Plaintiff fired from them.

2.    That as a result of the conduct of Elliot, and Wagoner, Plaintiff has sustained actual damages in excess of $10,000.00.

3.    Plaintiff should be awarded punitive damages in excess of $10,000.00 reimbursed for his court costs.

### VII.    CONCLUSION

WHEREFORE, Plaintiff requests judgment against BCCCW and City of Wagoner in excess of $10,000.00, declaratory and injunctive relief as stated herein, reimbursement of court

EXHIBIT 1

costs and attorney fees; judgment against the individual defendants in excess of $10,000.00, an

award of punitive damages in excess of $10,000.00, reimbursement of court costs and attorney

fees.

Brendan M. McHugh, OBA #18422
Attorney for Plaintiffs
P.O. Box 1392
Claremore, OK  74018
(918) 608-0111
Fax: (918) 803-4910
Email:Brendan@lawinok.com

and
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, Oklahoma 74301
Tele: (918) 457-6626
Fax: (918) 517-3431
Email: danajimlaw@gmail.com
Co-Counsel for Plaintiffs

**JURY TRIAL DEMANDED**

**ATTORNEY LIEN CLAIMED**

16

EXHIBIT 1

# Wagoner police refuse to answer why officer caught drunk driving wasn't arrested

By Leif M. Wright
Tuesday, March 26, 2019, 11:00 AM

A November 2017 drunk driving wreck in Wagoner never got reported anywhere because the driver, Travis Potts, is a police officer in the town.

According to an incident report filed that day, "Travis Potts was intoxicated" while he was driving a pickup truck and failed to negotiate a turn, crashing the truck with a woman and two "small kids" as passengers.

Two Wagoner Police deputy chiefs arrived at the scene and began what several concerned citizens have complained was a coverup. All three passengers told police Potts was driving the truck. Potts was transported to the police department by Deputy Chief Ponds, but was never arrested, nor was he charged for the crime.

Requests for comment from the police department were met with "You are welcome to request any open records you want. No one here is available to answer your questions."

The non-arrest was not Potts' first run-in with alcohol and trouble, according to other documents obtained by MuskogeeNOW.com. In 2011, Potts was reported to his military superiors for drinking underage and driving while drunk, according to a report obtained from when he was a lance corporal. His pay was docked and he was suspended in that incident.

Requests for documents related to his non-arrest while driving drunk with three passengers were met with a letter from the city of Wagoner stating "The records either do not exist or are confidential pursuant to OS 24A.7."

The statute cited in that letter says public records can be kept confidential if they relate to "personnel investigations", however drunk driving is a public crime, and every other person caught driving drunk — especially after they've had a wreck — ends up being arrested and booked for the crime.

Wagoner Police offer no explanations for why the crime was not made public and why Potts was never arrested for it.

**EXHIBIT 1**

EXHIBIT 1

6/5/2019                                    Mail - celliott@wagonercounty.ok.gov

## Re: November Report

B mat <bmat7@live.com>
Mon 12/17/2018 6:10 PM

To Sheriff Chris Elliott <celliott@wagonercounty.ok.gov>;

Sounds wonderful, thank you and have a great holiday.

**From:** Sheriff Chris Elliott <celliott@wagonercounty.ok.gov>
**Sent:** Monday, December 17, 2018 3:52 PM
**To:** B mat
**Subject:** Re: November Report

The lack of not writing tickets in the town of Okay falls squarely on my shoulders. This situation shall be corrected. You will see a traffic enforcement increase for the remainder of December and the up coming months as well.

Sent via the Samsung Galaxy S7 edge, an AT&T 4G LTE smartphone

-------- Original message --------
From: B mat <bmat7@live.com>
Date: 12/17/18 8:33 AM (GMT-06:00)
To: Sheriff Chris Elliott <celliott@wagonercounty.ok.gov>
Subject: Re: November Report

Sheriff Elliott,

This looks great, I appreciate what an upgrade will do to reporting. Being in the IT world it is easy to get bad data during an upgrade.

We are doing well and I understand your difficulty in writing tickets for our community based on your policies. I do want to encourage more ticket revenue where applicable. The taxes are down in our town this year and I want to ensure we can continue our excellent law enforcement coverage. Please understand I am not asking you to write tickets to arbitrarily generate revenue, rather making sure we claim the opportunity to help fund our law enforcement needs.

Thank you and your staff for all that you do for our community.

Mayor Brad Mathews

**From:** Sheriff Chris Elliott <celliott@wagonercounty.ok.gov>
**Sent:** Tuesday, December 4, 2018 12:55 PM
**To:** B mat
**Subject:** November Report

Mayor attached is the November report. I'm satisfied with our efforts. Once again we have very little reported crime in the town of Okay. I attribute this to the high number of dedicated patrols of the town (524 or 17.46 patrols a day) 16 school zone patrols.

It should be noted that the school zone patrols numbers are not accurate due to the fact that not all of the deputies are not correctly advising dispatch that they are actually in the school zones, rather than generally patrolling Okay. I also believe that dispatch is not entering the school zone patrols correctly in CAD. This issue is being addressed with the 911 Coordinating as well as with my patrol supervisor.

You will note that the format of the report is different. October of this year 911 upgraded their CAD in the middle of the month which made it difficult to extrapolate the correct figures for an accurate report. October I did not send a report because it was very inaccurate due to the upgrade.

If you have questions feel free to call me.

Thanks


**EXHIBIT 2**

*Sheriff Chris Elliott*
Wagoner County Sheriff's Office

https://outlook.office.com/owa/celliott@wagonercounty.ok.gov/?offline=disabled&path=/mail/search                    1/2

EXHIBIT 1

6/5/2019

Mail - celliott@wagonercounty.ok.gov

307 E. Cherokee
Wagoner, OK 74467
918-485-3124
Fax 918-485-4938

EXHIBIT 1

May 31 2019 12:54PM Town of OkayQssstuvwerssA 91868764547+7788+-50 page 2

# Transparency for Oklahomans, LLC
## PO BOX 523
## Bixby, Oklahoma 74008
## 918-340-0517
## Www.transparencyforoklahomans.com

Certified Mail Article Number: 7014 2870 0001 6830 1824
Return Receipt Article Number: 9590 9402 3548 7305 1787 71
Via e-mail townofokay@yahoo.com

May 30, 2019

City of Okay
7420 N. 37th Street
Okay, Oklahoma 74446

Attn: Records Custodian

To whom it may concern:

My name is Christopher Barnett, I am the President of Transparency for Oklahomans. We are a public watch dog group, requesting records under the Oklahoma Open Records Act in the interest of the public.

On behalf of Transparency for Oklahomans, I, hereby submit my request to the town of Okay, Oklahoma for the following:

1. Please provide TFO with all e-mails sent or received from Mayor Brad Matthews from the e-mail address bmat7@live.com to the email address celliott@wagonercounty.ok.gov for the time period of October 01, 2018 to current.

2. Please provide TFO with all emails sent or received from the email address townofokay@yahoo.com for the time period of October 01, 2018 to current.

Please provide all documents as soon as possible. We request all documents be provided no later than Monday June 03, 2019 by 1pm. Electronic records are requested. No search fee shall apply as this request is made in the interest of the public. We understand that the Mayor has sent several emails to the Sheriff encouraging the Sheriff's office to write more tickets to generate revenue because taxes are down in Okay, Oklahoma.

If we do not receive the records by Monday, June 03, 2019 by 1pm, we will file suit and have the City of Okay, Oklahoma served the same day.

We urge the City of Okay to fully comply with the Oklahoma Open Records Act.

Sincerely
Christopher J. Barnett
President, Transparency for Oklahomans

**EXHIBIT 3**

EXHIBIT 1

LAW OFFICES

# DOYLE HARRIS DAVIS & HAUGHEY

A PROFESSIONAL CORPORATION

2419 EAST SKELLY DRIVE

TULSA, OKLAHOMA 74105

max.harris@1926blaw.com

S. MAX HARRIS

MAILING ADDRESS
P.O. BOX 701410
TULSA, OK 74170-1410

TELEPHONE
(918) 592-1276

FAX
(918) 592-4389

www.1926blaw.com

Fed. I.D. 73-1034582

**CERTIFIED MAIL - 7011 2970 0001 7873 9169**

**June 19, 2019**

Christopher J. Barnett, President
Transparency for Oklahomans, LLC
P.O. Box 523
Bixby, OK 74008

Re:   *May 30, 2019 Open Records Request from Transparency for Oklahomans, LLC*

Dear Mr. Barnett:

This law firm represents the Town of Okay ("Town"). Concerning your May 30, 2019 Open Records Request (copy attached), the following numbered paragraphs correspond to the numbered paragraphs in your letter.

1.     The Town has no legal obligation to and does not maintain records of emails sent or received from the email address bmat7@live.com to celliott@wagonercounty.ok.gov for the time period of October 1, 2018 through May 30, 2019. Therefore, there are no responsive emails to the request.

2.     The Town has no record of any emails sent or received from the email address townofokay@yahoo.com for the time period of October 1, 2018 through May 30, 2019. Therefore, there are no responsive emails to the request.

Best Regards,

S. Max Harris

cc:    Town of Okay (Email)
1839-4:mh

**EXHIBIT 4**

EXHIBIT 1

From: **Transparency for Oklahomans** <transparencyforoklahomans@gmail.com>
Date: Wed, Jun 19, 2019 at 10:53 AM
Subject: In response to your letter 06/19/2019 open records request town of Okay, Oklahoma
To: Max Harris <max.harris@1926blaw.com>, Trish Franklin <trish@1926blaw.com>, <bmat7@live.com>

I would urge you to brush up on The Oklahoma Open Records Act. The Mayor of Okay, Oklahoma is currently in violation of the Oklahoma Open Records Act and I will seek to have criminal charges pressed and also file a civil suit against the town of Okay, Oklahoma as well as the Mayor for denying access to the records.

See the e-mail attached. The Mayor has used his personal e-mail address to conduct City Business, thus it is a record under the Oklahoma Open Records Act.

Just because the Mayor sent the email from his personal email address does not mean he does not have to produce the emails. The e-mail address provided to me townofokay@gmail.com was provided by the city clerk in a recorded phone call and the clerk told me in this recorded phone call that the Mayor of Okay, Oklahoma uses the email address bmat7@live.com. Clearly, the e-mail attached shows that the Mayor has used this e-mail address to conduct City business.

Perhaps this story gets even more interesting since the Mayor sent this from his personal e-mail address and now Okay, Oklahoma refuses to comply with the act. Many concerned citizens believe that the Mayor sent this email from his personal e-mail address in an attempt to skirt the open records act and tell Sheriff Chris Elliott to write more tickets.

This also made Fox23 news today. This matter isn't going away until Okay, Oklahoma and its Mayor fully comply with the act. It is my hope that we don't have to file suit against Okay, Oklahoma, but be advised, we have the petition ready to file if you do not produce the records no later than June 20, 2019 by 3pm or Transparency for Oklahomans will file a civil suit this week against Okay, Oklahoma, The Mayor for violating the Oklahoma Open Records Act.

It would be a shame for citizens to have to defend a lawsuit based on the ignorance of your law firm and the shady dealings of the Mayor of Okay, Oklahoma. Transparency for Oklahomans stands ready to file suit and obtain Injunctive relief and a restraining order preventing the destruction of the records sought.

Even if your client deletes the e-mails, we can still obtain them via a subpoena.

We are right in our position and we will spend anything it takes to bring the Mayor of Okay, Oklahoma and the City of Okay, Oklahoma into full compliance with the Oklahoma Open Records act.

## Oklahoma Statutes Citationized
### Title 51. Officers
Chapter 1 - General Provisions
Oklahoma Open Records Act
Section 24A.3 - Definitions
Cite as: O.S. §, __ __

As used in the Oklahoma Open Records Act:

1. **"Record" means all documents, including, but not limited to, any book, paper, photograph, microfilm, data files created by or used with computer software, computer tape, disk, record, sound recording, film recording, video record or other material regardless of physical form or characteristic, created by, received by, under the authority of, or coming into the custody, control or possession of public officials, public bodies, or their representatives in connection with the transaction of public business, the expenditure of public funds or the administering of public property.**

## Oklahoma Statutes Citationized                    **EXHIBIT 5**
### Title 51. Officers
Chapter 1 - General Provisions
Oklahoma Open Records Act
Section 24A.17 - Violations of Oklahoma Open Records Act - Civil Liability
Cite as: O.S. §, __ __

EXHIBIT 1

A. Any public official who willfully violates any provision of the Oklahoma Open Records Act, upon conviction, shall be guilty of a misdemeanor, and shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a period not exceeding one (1) year, or by both such fine and imprisonment.

B. Any person denied access to records of a public body or public official:

1. May bring a civil suit for declaratory or injunctive relief, or both, but such civil suit shall be limited to records requested and denied prior to filing of the civil suit; and

2. If successful, shall be entitled to reasonable attorney fees.

C. If the public body or public official successfully defends a civil suit and the court finds that the suit was clearly frivolous, the public body or public official shall be entitled to reasonable attorney fees.

D. A public body or public official shall not be civilly liable for damages for providing access to records as allowed under the Oklahoma Open Records Act.


I look forward to your response and I hope you follow the law and provide the records.  Otherwise, we'll see the City of Okay, Oklahoma in court soon and I'll be seeking the arrest of the Mayor for violation of the Oklahoma Open Records Act.  I hope I have made our position very clear.


Thank you

Christopher J. Barnett
Transparency for Oklahomans

EXHIBIT 1

LAW OFFICES

# DOYLE HARRIS DAVIS & HAUGHEY

A PROFESSIONAL CORPORATION

2419 EAST SKELLY DRIVE

TULSA, OKLAHOMA 74105

max.harris@1926blaw.com

S. MAX HARRIS

MAILING ADDRESS
P.O. BOX 701410
TULSA, OK 74170-1410

TELEPHONE
(918) 592-1276

FAX
(918) 592-4389

www.1926blaw.com

Fed. I.D. 73-1034582

## EMAIL & U.S. MAIL

**June 19, 2019**

Christopher J. Barnett, President
Transparency for Oklahomans, LLC
P.O. Box 523
Bixby, OK 74008

Re:     *May 30, 2019 Open Records Request from Transparency for Oklahomans, LLC*

Dear Mr. Barnett:

Concerning your May 30, 2019 Open Records Request, attached are emails (4 pages total) which are responsive to your Open Records Request for emails sent or received from the email address bmat7@live.com to celliott@wagonercounty.ok.gov. Since these emails were received by an email address used for the Town of Okay (Town) business and were maintained by the Town, they are Town records and are being produced.

Best Regards,

S. Max Harris
cc:      Town of Okay (Email)
1839-4:mh

EXHIBIT 1

8/4/2019                                    Yahoo Mail - Fwd: March Report

## Fwd: March Report

From: B mat (bmat7@live.com)

To:    townokay@yahoo.com

Date: Tuesday, April 2, 2019, 8:47 PM CDT

Get Outlook for Android

---

**From: Sheriff Chris Elliott <celliott@wagonercounty.ok.gov>**
**Sent: Tuesday, April 2, 2019 4:45:53 PM**
**To: Brad Matthews**
**Subject: March Report**

Attached is the March report.

Mayor the only crime that was reported was a 1 assault just occurred.  Either we are doing a phenomenal job or the citizens are not notifying the Sheriff's Office when they there is criminal activity.  Please pass along the importance of reporting all criminal activity so we can be aware and address the issues.

**Sheriff Chris Elliott**
Wagoner County Sheriff's Office
307 E. Cherokee
Wagoner, OK 74467
918-485-3124
Fax 918-485-4938

 March Report.pdf
10.6kB

EXHIBIT 1

# Type Total Report

| | | | | Print Date: | 01-Apr-19 |
| | | | | Print Time: | 12:26:49 PM |
| | | | | User Name: | mtaylor |

Incidents Created From: 01-Mar-19 00:00:00 AM To: 31-Mar-19 12:26:15 PM; Unit Org: WAGONER.LAW.WCSO; Unit(s): All; Source: All; Community: OKAY

| WCSO | 10-10 | OUT OF SERVICE SUBJECT TO CALL | 1 |
| WCSO | 1021 | PHONE REQUEST | 1 |
| WCSO | 10-45 | LUNCH | 1 |
| WCSO | 911HU | 911 HANG UP | 2 |
| WCSO | ALARMI | ALARM INTRUSION | 3 |
| WCSO | ASLTJO | ASSAULT JUST OCCURRED | 1 |
| WCSO | CONTACT | COMMUNITY CONTACT | 51 |
| WCSO | FOLLOW | FOLLOW UP | 1 |
| WCSO | PATOKA | PATROLLING OKAY | 496 |
| WCSO | PATPOR | PATROLLING PORTER | 1 |
| WCSO | PEDCHK | PEDESTRIAN CHECK | 2 |
| WCSO | SA | SPECIAL ASSIGNMENT | 2 |
| WCSO | SCHOOL | SCHOOL ZONE | 8 |
| WCSO | TS | TRAFFIC STOP | 3 |

Type Count -WCSO: 573

Total Incidents: 573

For Official Use Only

Page 1 of 1

EXHIBIT 1

Yahoo Mail - Fwd: January 2019 Report

Fwd: January 2019 Report

From:  B mat (bmat7@live.com)

To:      townokay@yahoo.com

Date:  Thursday, March 14, 2019, 2:39 PM CDT

Get Outlook for Android

---

**From:** Sheriff Chris Elliott <celliott@wagonercounty.ok.gov>
**Sent:** Friday, February 1, 2019 5:05:09 PM
**To:** B mat
**Subject:** January 2019 Report

**Sheriff Chris Elliott**
Wagoner County Sheriff's Office
307 E. Cherokee
Wagoner, OK 74467
918-485-3124
Fax 918-485-4938

January Report.pdf
10.7kB

EXHIBIT 1

# Type Total Report

Print Date:   01-Feb-19
Print Time:   09:10:07 AM
User Name:   mtaylor

Incidents Created From: 01-Jan-19 00:00:00 AM To: 31-Jan-19 09:09:38 AM; Unit Org: WAGONER.LAW.WCSO; Unit(s): All; Source: All; Community: OKAY

| | | | |
|---|---|---|---|
| WCSO | 10-10 | OUT OF SERVICE SUBJECT TO CALL | 7 |
| WCSO | 1021 | PHONE REQUEST | 1 |
| WCSO | ALARMI | ALARM INTRUSION | 4 |
| WCSO | ANIMAL | ANIMAL COMPLAINT | 1 |
| WCSO | CONTACT | COMMUNITY CONTACT | 39 |
| WCSO | FOLLOW | FOLLOW UP | 1 |
| WCSO | FRAUD | FRAUD | 1 |
| WCSO | GENCOM | GENERAL COMPLAINT REPORT | 1 |
| WCSO | MVA | MVA NO INJURY | 2 |
| WCSO | NOTE | NOTE FOR LOG | 1 |
| WCSO | OPEN | OPEN DOOR / WINDOW | 1 |
| WCSO | PATOKA | PATROLLING OKAY | 505 |
| WCSO | PATROL | NEIGHBORHOOD PATROL | 1 |
| WCSO | SA | SPECIAL ASSIGNMENT | 3 |
| WCSO | SCHOOL | SCHOOL ZONE | 14 |
| WCSO | SUICID | SUICIDAL SUBJECT | 1 |
| WCSO | SUSSUB | SUSPICIOUS SUBJECT | 1 |
| WCSO | SUSVEH | SUSPICIOUS VEHICLE | 2 |
| WCSO | TS | TRAFFIC STOP | 6 |

Type Count -WCSO:   592

Total Incidents:   592

For Official Use Only

EXHIBIT 1

whether you are on duty or off, your conduct reflects on Wagoner County. You are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that Wagoner County considers inappropriate include, but are not limited to the following. This is **NOT** a complete list and the County reserves the right to investigate, make judgments and take appropriate disciplinary action in each individual incident. The level of severity of any infraction is solely at the discretion of the Elected Official.

- Falsifying employment or other County records.
- Violating the County's non-discrimination and/or sexual harassment policy.
- Soliciting or accepting gratuities.
- Excessive absenteeism or tardiness.
- Excessive, unnecessary, or unauthorized use of County supplies, particularly for personal purposes.
- Reporting to work intoxicated or under the influence of non-prescribed drugs, and illegal manufacture, possession, use, sale, distribution or transportation of drugs.
- Bringing or using alcoholic beverages on County property or using alcoholic beverages while engaged in County business off County premises, except where authorized.
- Fighting or using obscene, abusive, or threatening language or gestures.
- Theft of property from co-workers or the County.
- Disregarding safety or security regulations.
- Insubordination or willful refusal to follow an order.
- Failing to maintain the confidentiality of protected County information.
- Conviction of a crime.
- Falsifying time keeping records with intent to defraud.
- Deliberate or willful misrepresentation of County policy.
- Willful damage or destruction of County property.
- Loafing, loitering or sleeping during work time.
- Neglect of duty or incompetence.
- Improper recording of time worked.
- Work performance which is below the standards of performance required by the department.
- Distribution or posting of written or printed matter that is not authorized by the Elected Officer.
- Inefficiency or lack of effort in the performance of duties.
- Careless, negligent or improper use of County property or equipment.
- Thoughtless conduct which results in injury to others or in more than minor property damage.
- Willfully causing damage or destruction of equipment or property belonging to the County or to fellow employees.

EXHIBIT 1