IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF OKLAHOMA

KYLE BLAKE JOHNSON,

    Plaintiff,

vs.                                        No. 20-CV-244-WPJ

BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF WAGONER, a political
subdivision and municipal corporation, *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT ELLIOTT'S MOTION FOR SUMMARY JUDGMENT and
PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND**

**THIS MATTER** comes before the Court following Defendants' two Motions for Summary Judgment and Plaintiff's Alternative Motion to Remand. The primary issue addressed in this Order is whether Plaintiff Kyle Johnson has established a genuine issue of material fact with respect to his Section 1983 and malicious interference claims against Defendant Chris Elliott in his individual capacity and, in turn, whether Defendant Elliott is entitled to judgment as a matter of law. Having carefully reviewed the pleadings and the applicable law, the Court finds that summary judgment is appropriate for Plaintiff's Section 1983 claim and that the remaining malicious interference claim should be remanded to state court. Therefore, Defendant Elliott's Motion for Summary Judgment (Doc. 41) is hereby **GRANTED IN PART** and Plaintiff's Alternative Motion to Remand (Doc. 60) is hereby **GRANTED IN PART**.

## BACKGROUND

In the outskirts of Wagoner County is the small town of Okay, Oklahoma. With about 700 residents,[1] Okay does not have the resources to fund its own police department and thus relies on the Wagoner County Sheriff's Office ("WCSO") to provide such services. For nearly six and a half years before this litigation, Mr. Kyle Johnson ("Plaintiff") served as a Lieutenant in that police force. It was in this capacity Plaintiff alleges he discovered a conspiracy between the Mayor of Okay and WCSO to set up an illegal "speed trap" in the town of Okay. *See* OKLA. STAT. TIT. 47 § 2-117(E)(3). Plaintiff traces the inception of this alleged conspiracy to an email dated December 17, 2018, from former Okay Mayor Brandon Matthews to WCSO Sheriff Chris Elliott:

> . . . I understand your difficulty in writing tickets for our community based on your policies. I do want to encourage more ticket revenue where applicable. The taxes are down in our town this year and I want to ensure we can continue our excellent law enforcement coverage. Please understand I am not asking you to write tickets to arbitrarily generate revenue, rather making sure we claim the opportunity to help fund our law enforcement needs.

Plaintiff alleges that WCSO consequently mandated a quota for writing citations in the town of Okay. If an officer failed to meet this quota, Plaintiff asserts that WCSO would confine him or her to writing tickets during work shifts. Such practice, according to Plaintiff, would amount to 4,000 percent over the "lawful citation limit" and would therefore qualify as an illegal speed trap.[2] At some point, Plaintiff raised this concern to both Major Dorr and Undersheriff Riggs—to no avail. In response, Undersheriff Riggs allegedly told Plaintiff that everyone needed to write a few tickets a day to make the Mayor happy.

---

[1] U.S. CENSUS BUREAU, *City and Town Population Totals: 2010-2019*, https://www.census.gov/data/tables/time-series/demo/popest/2010s-total-cities-and-towns.html.

[2] While Plaintiff references a "lawful citation limit," he refrains from citing evidence to suggest that such a limit in fact existed under Oklahoma law. Relatedly, Plaintiff fails to substantiate how WCSO's citation practice constituted an illegal speed trap, as discussed in further detail below. On this point, however, Defendant Sheriff Elliot admitted that he is aware that "speed traps" are unlawful—something routinely taught at the Police Academy.

This alleged speed trap conspiracy culminated in a second email dated May 1, 2019 (the "May 1 email") from Major Dustin Dorr to Plaintiff and three other WCSO shift supervisors:

> After researching Okay and Porter citations what I have learned is there are very few if any citations being written in those townships. I know we have asked multiple times for you guys to write a few citations a week for hazardous moving violations, not soccer mom doing 8 over. So you guys have forced me to take the following actions, here is your directive that will be followed out weekly. [He then assigns the supervisors to various shifts in Okay and Porter.] This is a directive that will continue until YOU GUYS / GAL can on your own efficiently manage your squad, I also will expect a weekly email with how many neighborhood patrols, traffic stops, citations, and warnings (not the hot sheet, a separate email).

After receiving this message, Plaintiff alleges he spoke with a Fox 23 news reporter investigating the alleged speed trap and claiming to have filed an open records request for all such emails. Fox 23, however, never filed such a request.[3] Nevertheless, Plaintiff contacted said reporter and informed him that he had only received a fraction of the story. Despite never having seen an open record request pertaining to these emails, never having responded to such a request before, and having zero knowledge of the procedure for responding to these requests, Plaintiff without permission forwarded this email to Fox 23. Motivating this decision was his belief that Sheriff Elliott and others were withholding documents in response to these nonexistent record requests[4] in an effort to cover up the alleged speed trap.

Inevitably, WCSO discovered on social media the unauthorized release of the May 1 email around June 10, 2019. Soon thereafter, Plaintiff admitted to Major Dorr to being the "whistle blower" behind the leaked email. WCSO suspended him within minutes and cancelled the scheduled patrols described in the email due to potential risk posed to officer safety. Upon

---

[3] An email from Wagoner County Clerk Lori Hendricks confirms that Fox 23 never filed a request for the May 1 email. Aside from the unsubstantiated rumor referenced above, Plaintiff offers no relevant evidence to the contrary.

[4] Plaintiff disputes Defendant's factual allegation that "the May 1, 2019 email was not responsive to any open records requests which had been received by the WCSO" by citing the Transparency for Oklahomans, LLC's records requests for Sheriff Elliot's and Major Matthews' emails. Those requests, however, did not target the emails of Major Dorr, who authored the May 1 email. Therefore, the Court finds indisputable that not a single record request implicated the May 1 email that Plaintiff alleges was illegally "withheld" from the public.

completing her investigation, Chief Deputy Lesley Young determined that Plaintiff released the email without authority to do so, with intent to embarrass WCSO, and without due regard for officer safety. Plaintiff characterizes Young's rationale as "obviously nonsensical"—a mere pretext to hide WCSO's illegal conspiracy—and cites Sheriff Elliot's testimony indicating a lack of written policy prohibiting the dissemination of officer location. On the other hand, Sherriff Elliott believes common sense dictates that such information could jeopardize officer safety and spoil the objectives of police operations. Ultimately, Sheriff Elliott accepted Young's recommendation to terminate Plaintiff's employment on July 18, 2019, finding that Plaintiff had violated pertinent policy by "failing to maintain confidentiality of protected county info" and "distribut[ing] or posting . . . written or printed matter that is not authorized by the elected officer."

Plaintiff filed this lawsuit on July 21, 2020, asserting against Defendant Sheriff Elliott in his individual capacity two causes of action: (1) a Section 1983 claim on the basis that Sheriff Elliott violated Plaintiff's freedom of speech, and (2) a malicious interference state law claim.

**SUMMARY JUDGMENT**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it could change the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a reasonable finder of fact could conclude for the nonmoving party. *Id.* Moreover, the record and reasonable inferences are viewed in the light most favorable to the party opposing summary judgement. *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgement stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the moving party meets its burden, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of facts could find for the nonmovant." *Id.* (citations omitted).

## ANALYSIS

The Court proceeds by applying this standard to Plaintiff's Section 1983 claim and then determining whether Plaintiff's malicious interference claim should be remanded to state court.

### I. Plaintiff cannot establish his § 1983 claim on the basis that Defendant Elliott violated his freedom of speech.

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. *Becker v. Kroll*, 494 F.3d 904, 913 (10th Cir. 2007) (citing 42 U.S.C. § 1983). Plaintiff's claim here boils down to whether Sheriff Elliott "discharge[d] [Plaintiff] on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). To evaluate this alleged violation the Court must employ the *Garcetti/Pickering* five step test by determining:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (citation omitted). The Court's analysis here, however, is confined to the first three elements, which are questions of law. *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1222 (10th Cir. 2017). To establish these elements, Plaintiff argues that he "was explicitly terminated because of his communications regarding the speed trap. This

is protected speech and adverse employment actions were rendered on the unlawful policies of Elliott of muzzling people and preclusion of negative criticism and resulting retaliation."

### A. Plaintiff's speech was not pursuant to Plaintiff's official duties.

Defendant does not dispute this element—likely because Plaintiff strayed far from his official duties by forwarding the May 1 email to Fox 23. *See Green v. Board of County Commissioners*, 472 F.3d 794, 800 (10th Cir. 2007) (stating that communication with newspapers or legislators is not usually pursuant to official duties); *Casey v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) (externally voicing concerns to Texas legislators, not internally to supervisors, was constitutionally protected speech not pursuant to official duties); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074 (9th Cir. 2013) ("When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties."). Therefore, the Court finds Plaintiff easily satisfies this element.

### B. Plaintiff's speech was a matter of public concern.

Second, Plaintiff must establish that the May 1 email was a "matter of public concern." *See Trant*, 754 F.3d at 1165. The Court begins this analysis by painting the broader context in which Major Dorr sent this message. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). About five months before the May 1 email, former Mayor Matthews sent a separate email encouraging Sheriff Elliott to boost ticket revenue in Okay due to the decrease in tax revenue and the need to fund law enforcement coverage. Relying on this email, Fox 23 aired a segment investigating whether WCSO had violated Oklahoma law by employing speed traps in the town of Okay, which Mayor Matthews and Major Dorr vehemently disclaim.[5] By this point, the speed trap allegation had certainly

---

[5] In this segment, Major Dorr states that WCSO had only stopped twelve cars in Okay over the past sixty days, which was not indicative of a "speed trap." In response, Plaintiff argues this is "flatly false as a quota was imposed as well as the demand the tickets exceed the speed trap requirement." The Court finds Plaintiff's argument conclusory and insufficient to disprove Major Dorr's allegation.

become an issue of public concern. *See City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) ("[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.").

It was in this context that Major Dustin Dorr sent the May 1 email—the centerpiece of Plaintiff's Section 1983 claim—to Plaintiff and other WCSO supervisors. Once again, it states:

> After researching Okay and Porter citations what I have learned is there are very few if any citations being written in those townships. I know we have asked multiple times for you guys to write a few citations a week for hazardous moving violations, not soccer mom doing 8 over. So you guys have forced me to take the following actions, here is your directive that will be followed out weekly. [He then assigns the supervisors to various shifts in Okay and Porter.] This is a directive that will continue until YOU GUYS / GAL can on your own efficiently manage your squad, I also will expect a weekly email with how many neighborhood patrols, traffic stops, citations, and warnings (not the hot sheet, a separate email).

Given the elevation of the speed trap allegation to local importance, Major Dorr's email underscoring the need to increase citations and outlining patrol schedules conceivably improved the public's understanding of this issue. Put differently, the May 1 email constituted *potential* evidence of the alleged speed trap in the Town of Okay. *See Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998) ("[S]peech which discloses *any* evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import.") (emphasis added) (quotations and citation omitted); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1206 (10th Cir. 2007) ("Speech concerning *potential* illegal conduct by government officials is inherently a matter of public concern.") (emphasis added). Therefore, the Court finds that the contents of the May 1 email was a matter of public concern.

Defendant forcefully argues that WCSO's alleged wrongdoing is too speculative to be a matter of public concern. This argument fails with respect to the speed trap allegation, although it does factor into the Court's evaluation of Plaintiff's free speech interest described below.

Defendant's argument, however, certainly forecloses Plaintiff's implicit proposition that the "withholding" of the May 1 email in response to the records request also establishes this element. Critically, none of the requests to which Plaintiff cites covered the May 1 email. Plaintiff never saw an open record request pertaining to these emails, had never responded to such a request before, and had zero knowledge of the procedure for responding to these requests. In short, Plaintiff's subjective beliefs regarding the "withholding" of documents is far too speculative to warrant a matter of public concern.

### C. The government's interest in promoting public service efficiency outweighs Plaintiff's free speech interest.

Third, the Court must carefully balance Plaintiff's interest "as a citizen, in commenting upon matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Lane v. Franks*, 573 U.S. 228, 236 (2014) (quoting *Pickering v. Board of Ed. of Township High School Dist. 205*, 391 U.S. 563, 568 (1968)). Accordingly, the Court evaluates both interests below and ultimately finds that the balance weighs in the government's favor.

By forwarding the May 1 email to Fox 23, Plaintiff hoped to shed light on WCSO's alleged speed trap and its withholding of documents in response to what Plaintiff believed were open records requests. As described above, it is indisputable that not a single records request implicated the May 1 email, so that allegation falls far short of establishing a concrete free speech interest. *See* n.3 *supra*. The May 1 email does, however, equip Plaintiff with the interest of improving the public's understanding of the alleged speed trap. *See Waters v. Churchill*, 511 U.S. 661, 674 (1994) ("Government employees are often in the best position to know what ails the agencies for which they work . . ."); *City of San Diego, CA v. Roe*, 543 U.S. 77, 82 (2004) ("The interest at stake is as

8

much the public's interest in receiving informed opinion as it is the employee's own right to disseminate it.").

Nevertheless, the Court must discount Plaintiff's interest by the speculative nature of his allegation and the dubious manner in which he released such sensitive information. While Plaintiff claims that WCSO's citation practice was 4,000 percent over the lawful limit, he does not cite material evidence to substantiate this allegation. Aside from a passing reference to the Oklahoma Code, the Fox 23 news story, allegations of an imposed quota, and the two emails listed above, Plaintiff inadequately explains how WCSO's citation practice constituted an illegal speed trap, or how the May 1 email contributed to such a scheme. *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1222 (10th Cir. 2017) ("A public employer's burden to justify its restriction on speech increases in proportion to the value of that speech in the public debate.") (quotations and citation omitted). Additionally, the way by which Plaintiff exposed this information unjustifiably circumvented WCSO's process of protecting sensitive information. Plaintiff had never seen an open record request before the incident, nor did he have any knowledge of how WCSO responded to such requests. Motivated by a rumor that someone had filed a request, Plaintiff undermined this entire process by taking matters into his own hands. For these reasons, the Court accordingly discounts the value of Plaintiff's free speech interest. *Lytle v. City of Haysville*, 138 F.3d 857, 868 (10th Cir. 1998).

The Court now pivots to the Sheriff's interests in promoting public service efficiency. In short, releasing the May 1 email to Fox 23 exposed police officers' patrol schedules and locations, which increased safety risk and disrupted WCSO operations by forcing the cancellation of patrol

assignments.[6] And because this occurred in the law enforcement context, the Court places greater weight on such heightened interests. *See Helget*, 844 F.3d at 1223 ("We have long recognized that loyalty and confidence among employees is especially important in a law enforcement setting.") (citation omitted); *Moore v. City of Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995) ("[The] need [for workplace harmony] is particularly acute in the context of law enforcement, where there is a 'heightened interest . . . in maintaining discipline and harmony among employees.'") (citation omitted); *see also Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007) ("[B]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer.") (quotations and citations omitted).

Accounting for both sides, the Court finds that Sheriff Elliott's operational interests outweigh Plaintiff's speech interests in forwarding the May 1 email to Fox 23, warranting dismissal of Plaintiff's Section 1983 claim. *Helget*, 844 F.3d at 1225 (finding city's operational interest outweigh interest in supplying affidavit in former employee's litigation).[7]

## II.  Malicious Interference Claim

Plaintiff seeks remand of his malicious interference claim if his Section 1983 claim is dismissed. *See* Doc. 60. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

---

[6] For this reason, this case is unlike *Duda v. Elder* in which the Tenth Circuit held that the plaintiff's speech did not interfere with the police department's regular operations, and that the Defendant sheriff couldn't establish a heightened interest of maintaining workplace efficiency. 7 F.4th 899, 914–15 (10th Cir. 2021).

[7] Citing to unrelated past incidents exhibiting Sheriff Elliott's temper, Plaintiff argues that Sheriff Elliott "muzzled" employees by refusing to tolerate any form of criticism within WCSO. The Court, however, finds that Plaintiff has offered insufficient evidence to suggest that such alleged culture had a causal effect on Plaintiff's termination. If anything, this allegation is most relevant to Plaintiff's malicious interference claim, discussed below.

(1988); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238–40 (10th Cir. 2020). Having dismissed Plaintiff's only federal claim, the Court finds no exceptional reason to stray from the routine practice of remanding state law claims to state court.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 41) is hereby **GRANTED IN PART** in that Plaintiff's Section 1983 claim is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Alternative Motion for Remand (Doc. 60) is hereby **GRANTED IN PART** in that Plaintiff's malicious interference claim is hereby **REMANDED** to Oklahoma state court.

_____
WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE